# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Dillon R. SAPP
### Lieutenant (O-3), U.S. Coast Guard

### CGCMG 0392
### Docket No. 001-69-23

### 23 August 2023

General court-martial sentence adjudged on 27 March 2021.

| | |
|---|---|
| Military Judges: | CDR Paul R. Casey, USCG |
| Appellate Defense Counsel: | LT Schuyler B. Millham, USCG |
| Appellate Government Counsel: | LCDR Daniel P. Halsig, USCG |
| | LT Elizabeth M. Ulan, USCG |

## BEFORE
## McCLELLAND, HERMAN & MANNION
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial composed of officers. Contrary to his pleas, Appellant was convicted of one specification of assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice (UCMJ); and one specification of conduct unbecoming an officer by providing false information on an application for a concealed handgun permit, in violation of Article 133, UCMJ. The court sentenced Appellant to forfeiture of $3,920 per month for three months, 60 days restriction, and a punitive letter of reprimand. Judgment was entered accordingly.

Before this Court, Appellant has assigned the following errors:

I. The evidence is legally insufficient to prove that Appellant knowingly provided false information when his incomplete concealed handgun permit application was improperly filed by the Arlington County Circuit Court before he had signed it or attested that the information in the application was correct and complete under the penalty of perjury.

II.      The military judge abused his discretion when he permitted Ms. JB to provide an unsworn victim impact statement during presentencing proceedings in violation of R.C.M. 1001(c) when she was not the victim of an offense of which appellant was found guilty.

### Legal Sufficiency of Article 133 Evidence

Appellant argues that because his application for a concealed handgun permit was incomplete, lacking his signature, it should not have been accepted for filing, and therefore he cannot be held liable for submitting it. He also claims that because the military protective order he had received did not fit a particular statutory definition of "protective order," his answer to a question denying that he was the subject of a protective order was not false.

According to JB's testimony, Appellant received a Military Protective Order on 5 September 2019, effective until 4 December 2019, restraining him from initiating contact or communication with Ms. JB and directing him to remain at least 500 feet away from her. (R. at 538-539.) Testimony of a deputy clerk at the Circuit Court Clerk's Office in Arlington, Virginia, provided the following information. On 10 September 2019, Appellant presented an application for a concealed handgun permit at the Arlington Circuit Court Clerk's Office, along with the filing fee and his military identification card or a copy of it. (R. at 651-655.) Question 8.F. on the application form, "Are you the subject of, or named as a respondent in a restraining order or a protective order?" was answered "NO." (Pros. Ex. 11.) The application was unsigned, but it was received and filed. Two days later, he returned and sought to retract the application and receive a refund. Ultimately, an order was issued dismissing his application, but in the meantime, the police department had begun a background check. Ultimately, the Commonwealth Attorney's office filed a recommendation that the application be denied on grounds of a protective order. (R. at 656-660.)

We review questions of legal sufficiency de novo. "Evidence is legally sufficient if, viewing the evidence in the light most favorable to the prosecution and drawing every reasonable inference from the evidence of record in favor of the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v.*

*Flores*, 82 M.J. 737, 742 (C.G. Ct. Crim. App. 2022) (cleaned up) (quoting *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

The specification of which Appellant was found guilty alleges that he "knowingly provide[d] false information on an application for a concealed handgun permit . . . ." Whether or not the office to which he provided the application should have accepted it without a signature, under their rules and procedures, has no bearing on the matter. There is evidence that he submitted the application, which was accepted, resulting in commencement of other processes that evidently revealed the existence of his military protective order. The submission of the application provided the false information, as alleged.

As to the definition of "protective order," there is no reason to assume the definition Appellant identifies must be used in interpreting the question on the application form. The form notes that certain orders "may be an *automatic* disqualifier" (emphasis added), citing a particular statute. That statute makes it unlawful for a person to purchase a firearm if that person is subject to a protective order issued under any of a number of specified legal regimes. However, this does not mean that a protective order of a different provenance is of no relevance for the purposes of a concealed handgun permit. Further, it does not alter the plain meaning of the question, and of Appellant's answer, which was false within that plain meaning.

The evidence was legally sufficient to support the court-martial's finding of guilty.

**Victim Impact Statement**

The following is based on the testimony of witnesses Ms. JB and Dr. FR. (R. at 467-472; R. at 674-678.) Appellant and Ms. JB took a trip to the area of St. Petersburg, Florida, in September 2017. In a bar there, they encountered a college friend of hers, Dr. FR, whom she had not seen or talked with since college, nine years earlier. Excited, she introduced Appellant and Dr. FR, and then engaged in conversation with Dr. FR. She showed him something on her phone relating to her employment, and while he was looking at it, Appellant grabbed him by the neck and pushed him against the wall. Appellant was escorted from the bar, and Ms. JB followed him after apologizing to Dr. FR. Shocked at what had occurred, she asked Appellant why he had

done what he did, and he answered that he didn't like the way Dr. FR was looking at her. On the basis of this incident, Appellant was found guilty of assault consummated by a battery.

Appellant argues, consistent with his contention at trial, that the military judge abused his discretion by allowing consideration of the unsworn victim impact statement of Ms. JB, when she was not the victim of any offense of which Appellant was found guilty.

A crime victim of an offense of which the accused has been found guilty has the right to be reasonably heard at the presentencing proceeding relating to that offense. Article 6b(a)(4)(B), UCMJ; Rule for Courts-Martial, *Manual for Courts-Martial, United States* (2019 ed.) (R.C.M.) 1001(c)(1). A crime victim is defined as an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty. Article 6b(b), UCMJ; R.C.M. 1001(c)(2)(A). R.C.M. 1001(c)(2)(B) defines victim impact as "any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty."

A significant portion of Ms. JB's unsworn statement describes her friendship with Dr. FR: that she knew him "very well during college;" that they "spent quality time together, working out, going on hikes, and discussing our future plans regarding what we both were striving for in our careers;" and that running into him after so many years was "a joyous moment for us" until Appellant attacked him, "altering our friendship forever." The statement goes on to set forth the emotional impact on her of the offense: "To say I was shocked, humiliated and appalled is an understatement. There are no words to articulate the whirlwind of emotions I was trying to navigate at that time. I can't imagine what Frank was thinking or feeling. I am still remorseful for what happened to him that night."

Caselaw has not set limits on who can be a crime victim or the level of connection necessary between a purported victim and the offense, nor has there been significant legal development concerning the harm required. Appellant insinuates that the military judge's acceptance of the harm to Ms. JB as sufficient to qualify for consideration "neglects the requirement that the harm be 'direct.' " We disagree. We find that the harm Ms. JB described

directly resulted from Appellant's assault on Dr. FR, and qualifies for consideration. The military judge did not abuse his discretion.

Even if it were error to allow consideration of Ms. JB's unsworn statement, it would be harmless error. "When the Court finds error in the admission of sentencing evidence (or sentencing matters), the test for prejudice is whether the error substantially influenced the adjudged sentence." *United States v. Edwards*, 82 M.J. 239, 246 (C.A.A.F. 2022) (cleaned up) (quoting *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018)). "The Court considers four factors when deciding whether an error substantially influenced an appellant's sentence: (1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* at 247 (cleaned up) (quoting *Barker*, 77 M.J. at 384). In this case, the Government argued for a sentence of six months confinement and dismissal, while the defense argued for a sentence of restriction and a reprimand. The sentence adjudged was restriction, a reprimand, and forfeitures of half pay for three months. We find that consideration of Ms. JB's statement did not substantially influence the sentence.

## Decision

We determine that the findings and sentence are correct in law and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judges HERMAN and MANNION concur.



For the Court,

Sarah P. Valdes
Clerk of the Court